**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**COLUMBIA DIVISION**

| | |
|---|---|
| The Estate of Donald A. Drozd, by and through his Personal Representative, David Drozd, | C/A No.:   3:23-cv-05104-MGL |
| Plaintiff, | **COMPLAINT** (ERISA) |
| v. | (Non-jury) |
| Guardian Life Insurance Company of America and SEIBELS SERVICES GROUP, INC. Plan, | |
| Defendants. | |

The Estate of Donald A. Drozd, by and through his Personal Representative David Drozd ("Plaintiff"), complaining of Defendants Guardian Life Insurance Company of America ("Guardian") and the SEIBELS SERVICES GROUP, INC. Plan ("Plan") would show unto this Honorable Court as follows:

## NATURE OF THE ACTION

1. This lawsuit stems from a wrongful denial of benefits under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.* Don Drozd ("Drozd") worked for Seibles Bruce n/k/a Seibels Service Group, Inc. for more than 23 years in its human resources department. During the course of his employment with Seibels, Drozd was diagnosed with stage IV esophageal cancer along with the following health conditions: late-onset diabetes, auto-immune type 1 diabetes, diabetic ketoacidosis, and peripheral neuropathy. Some of the symptoms he experienced included, but are not limited to: nausea, vomiting, fatigue, weakness, shortness of breath, hiccoughs, chemo brain, and depression. Further, Drozd's disease prognosis was a one- to two-year life expectancy. Being the extraordinary person and employee he was, Drozd took leave when he was at

his sickest, but he was determined to return to work . . . and, he did. Working through the brain fog and other symptoms was hard so Drozd made a written request for reasonable accommodations, pursuant to the Americans with Disabilities Act ("ADA"), Ultimately, Seibels terminated Drozd's employment on April 3, 2020 – taking the position that he was unable to perform the essential functions of his job. Drozd immediately applied for disability benefits from Defendants. However, Defendants have wrongfully denied him all short-term disability ("STD") benefits, long-term disability ("LTD") benefits, continuation of life insurance with waiver of premium because of disability ("LWOP"), AD&D with catastrophic loss, cancer benefits, etc. Unfortunately, Drozd died on January 1, 2023, which aligned with the original medical prognosis Defendants were aware of. Defendants owe Drozd's estate wrongfully denied STD, LTD, refund of life insurance premiums under LWOP, AD&D with catastrophic loss, cancer benefits, as well as prejudgment interest, attorney's fees, costs and expenses, and other equitable remedies from Defendants' wrongful denial of benefits.

## **VENUE AND JURISDICTION**

2. Drozd was a citizen and resident of Lexington County, South Carolina; his estate is being probated in Lexington County.

3. At all times relevant to this lawsuit, Drozd worked in Richland County, South Carolina for Seibels Services Group, Inc. ("Seibels"), a domestic corporation that is located in Richland County, South Carolina.

4. Seibels provided STD, LTD, LWOP, cancer benefits, and AD&D and catastrophic loss coverage to eligible employees as part of its ERISA welfare benefits plan, as defined by 29 U.S.C. § 1002(1) and 29 U.S.C. § 1132(d)(a) *et seq*.

5. The name of Seibels' ERISA welfare benefit plan which provided STD, LTD,

LWOP, cancer benefits, and AD&D and catastrophic loss coverage to Drozd is SEIBELS SERVICES GROUP, INC. Plan ("Plan").

6. At all times relevant to this lawsuit, Seibels served as the plan sponsor of the Plan.

7. At all times relevant to this lawsuit Seibels served as the plan administrator of the Plan.

8. At all times relevant to this lawsuit, Defendant Guardian has served as the fiduciary and insurer of the Plan.

9. Defendant Guardian served as the underwriting insurance company to the Plan.

10. Defendant Guardian is a foreign corporation incorporated in New Jersey and headquartered in New York, New York.

11. Defendant Guardian issued the Plan to South Carolina residents, and has availed itself to the state of South Carolina.

12. Guardian is not registered with the South Carolina Secretary of State to conduct business in the State of South Carolina.

13. At all times relevant, Defendant Guardian insured the Plan under the group plan number 00556864.

14. At all times relevant to this lawsuit, Defendant Guardian has been the claims administrator of the Plan.

15. Under the Plan, Drozd was entitled to benefits so long as he was considered disabled.

16. Defendants' refusal to pay Drozd STD, LTD, LWOP, cancer, AD&D, and catastrophic loss benefits pursuant to the Plan was wrongful.

3

17.  As this action arises out of an employee group welfare benefit plan, the case is governed by ERISA, 29 U.S.C. § 1001, *et seq.*

18.  This Court has federal question jurisdiction under ERISA.

19.  Venue is proper under ERISA, as the Plan was administered in Richland County, South Carolina.

## **FACTS**

20.  Don Drozd died on January 1, 2023, of cancer.

21.  Drozd was only 55 years old when he died.

22.  Drozd had worked for Seibels Services Group, Inc. and its predecessors for over 23 years -- more than half of his life. (Admin. R. 5053.)

23.  Ironically, Drozd's final job title was Seibels corporate benefits manager. As the corporate benefits manager, Seibels required Drozd to travel, walk, stand, use his eyes constantly, use hand and finger coordination, maintain visual capacity, maintain oral capacity, and maintain auditory capacity. (Admin. R. 5141.)

24.  On May 29, 2019, Drozd had been diagnosed with metastatic esophageal adenocarcinoma, commonly known as stage IV esophageal and esophagogastric junction cancer at age 51. (Admin. R. 5080.)

25.  Drozd had never smoked tobacco products in his life.

26.  Drozd's cancer prognosis was one- to two-years to live. (Admin. R. 5053.)

27.  Drozd's cancer treatment included the drug entitled Keytruda, which is believed to have cause Drozd to become diabetic. (Admin. R. 5083.)

28.  Initially, Seibels approved Drozd for medical leave pursuant to the Family Medical Leave Act ("FMLA") from May 29, 2019, until March 15, 2020, but he returned to work early. (Admin. R. 4887.)

29. Between January 16, 2020, and January 27, 2020, Drozd was hospitalized as a result of diabetes triggered by the cancer treatment of Keytruda. (Admin. R. 5091.)

30. On January 29, 2020, Drozd returned to work at Seibels, but his medical conditions made performing his essential job functions difficult without accommodations. (Admin. R. 5053.)

31. Some of the side effects Drozd suffered from included but were not limited to: chemo brain, vomiting, nausea, fatigue, weakness, shortness of breath, hiccups, memory issues, and depression. (Admin. R. 5053.)

32. On February 18, 2020, following a conversation with Drozd on January 29, 2020, Seibels noted that Drozd needed accommodations of another co-worker assisting him with projects and meeting deadlines. Further, Seibels noted how even when meeting with Drozd, he struggled to recall information. (Admin. R. 5108-09.)

33. In 2020, Drozd was suffering from chemo brain. Chemo brain is a side effect of cancer treatment that causes an individual to struggle with: concentrating and being attentive; memorization of names, dates, and daily life activities; identifying words; simple math; multitasking; and an unstable emotional state. (Admin. R.5115.)

34. Prior to chemo brain and Drozd's medical complications from cancer, he was excellent in his job performance. A co-worker once wrote to Drozd, "You've been available and answered so many of my questions throughout the years. I also appreciate your ideas!" (Admin. R. 5111.)

35. Prior to his illnesses, on October 5, 2018, Seibels recognized Drozd for displaying respect, transparency, accountability, and collaboration.  Drozd's supervisor said, "Thank you for the long run, ups, downs, comings, goings.  Don is true blue to Seibels." (Admin. R. 5112.)

36. Prior to his illnesses, on October 10, 2018, Seibels recognized Drozd for exhibiting the character of respect. Specifically, a Seibels employee said, "Thank you for always handling my situations/questions respectfully. I also appreciate your promptness when responding to the many questions I have to ask. You really make some complicated things easier to understand." (Admin. R. 5113.)

37. On March 30, 2020, Drozd requested the following ADA accommodations as a result of health issues stemming from cancer and diabetes: working with another co-worker to assist him in remembering task and deadlines; occasional remote work to help him concentrate on projects, and opportunities to close his office door in order to take a break. His request for ADA accommodations also included him expressing that he was struggling with judgment, prioritization, memory, stress management, and focus. (Admin. R. 5104.)

38. On April 3, 2020, Seibels terminated Drozd's employment because Seibels could not and/or would not meet his requested accommodations and because Seibels believed he could not perform his essential job functions because of his disability. (Admin. R. 4790-92.)

39. Seibels then Vice President of Human Resources, Pam Ringquist, was later terminated for, at least in part, her role in terminating Drozd's employment.

40. Drozd immediately filed for short-term disability benefits from Defendants on the same day -- while he was still being paid by Seibels. As an exempt employee, Seibles had to pay Drozd for all of April 3, 2020.

41. Thereafter, Defendants denied Drozd benefits because of the termination of employment. (Admin. R. 5380.)

42. On August 21, 2020, Drozd appealed Defendants' denial of STD benefits. Additionally, he requested LTD benefits and LWOP. (Admin. R. 5053.)

43. On October 28, 2020, Drozd and his counsel made Defendants aware that the South Carolina Department of Employment and Workforce determined that Drozd was not discharged because of job performance and was eligible to receive benefits without disqualification. (Admin. R. 4787-92.)

44. On November 17, 2020, Defendants denied Drozd STD benefits. This time, Defendants said they were denying him because he was not disabled. (Admin. R. 4761.)

45. The Plan defines disability or disabled as "Not able to perform, on a Full-Time basis, the major duties of Your Own Job; and Not able to earn more the Plan's maximum allowed Disability Earnings." (Id.)

46. Defendant Guardian denied Drozd disability benefits despite its possession and review of medical records that exhibited Drozd's fatal cancer prognosis. (Admin. R. 5061-5102.)

47. On November 20, 2020, Defendant Guardian denied Drozd LTD benefits. (Admin. R. 4641.)

48. On November 22, 2020, Defendants denied Drozd LWOP. (Admin. R. 4619.)

49. Defendants allowed Drozd to convert and port his life insurance benefits and wrongfully continued to extract monthly premiums from Drozd when he should have been getting free group life insurance through the Plan under LWOP. (Admin. R. 4787-92.)

50. On October 21, 2021, Drozd appealed Defendants' denial of STD, LTD, and LWOP benefits. (Admin. R. 4172.)

51. The treating physicians all supported Drozd's claim for disability.

52. On appeal, Defendants received documentation of the medications and medical devices Drozd was prescribed and the side effects impacting him. (Admin. R. 4177-78.)

53. On appeal, Defendants received Drozd's medical records from internist, Dr. David Bridgers to review. (Admin. R.4180-4217.)

54. On appeal, Defendants received Drozd's medical records from endocrinologist, Dr. James Brennan, to review. (Admin. R.4219-72.)

55. On appeal, Defendants received Drozd's medical records from oncologist, Dr. Steven Minter, to review. (Admin. R. 4274-4460.)

56. On appeal, Defendants received Drozd's medical records from the University of Texas MD Anderson Cancer Center to review. (Admin. R. 4463-4557.)

57. On appeal, Defendants received proof that the federal government considered Drozd disabled from any substantial gainful activity as the Social Security Administration had found him disabled as of April 3, 2020, and had granted him Disability Insurance Benefits. (Admin. R.4559-64.)

58. On December 30, 2021, despite overwhelming evidence, Defendants again denied Drozd STD, LTD, and LWOP benefits under the Plan.

59. On January 1, 2023, Drozd died from stage IV esophageal and esophagogastric junction cancer.

60. All administrative remedies were exhausted prior to filing this lawsuit.

61. Plaintiff could not file this lawsuit until administrative remedies were exhausted.

62. The Probate Court appointed David J. Drozd, Don's brother, as the personal representative of the Estate of Donald A. Drozd by Certificate of Appointment dated April 5, 2023 (Case Number 2023-ES-32-00314).

63. Plaintiff asks this Court to award the Estate back disability for STD, LTD, AD&D with catastrophic loss, and cancer benefits; refund of life insurance premiums Drozd

paid when Defendants denied him LWOP, prejudgment interest, attorney's fees, and costs because of Defendants' wrongful denial of benefits.

**FOR A FIRST CAUSE OF ACTION**
(For benefits, taxable costs, interest, and attorney's fees)
Pursuant to ERISA,
29 U.S.C. §§ 1132(a)(1)(B) and (g))

64. Plaintiff incorporates all prior allegations and paragraphs, not inconsistent herewith, are hereby realleged as fully and effectually as is set forth herein verbatim.

65. Defendants' denials of benefits was wrongful under ERISA, 29 U.S.C. § 1132 (a)(1)(B).

66. As a result of Defendants' wrongful denials of benefits, Plaintiff has been forced to incur significant legal fees, costs, and expenses to secure rightful benefits.

67. Defendants have the ability to satisfy an award of attorney's fees under 29 U.S.C. § 1132(g) and awarding Plaintiff reasonable attorney's fees would not be a hardship on either Defendant.

68. Awarding attorney's fees would likely deter any continued mismanagement and mishandling of claims for benefits from these employee group plans, as to prevent this type of situation from occurring to the many other participants in the Plan who are eligible for similar additional coverage benefits and would suffer substantial hardships in seeking remedy.

69. Awarding Plaintiff reasonable attorney's fees is part of the legislative intent of Congress expressed in 29 U.S.C. Section 1001(b), in that ERISA was enacted to protect the interests of welfare plan participants by providing for appropriate remedies and sanction when Plan terms and/or ERISA are violated.

70. Based upon the foregoing, Plaintiff is entitled to an order declaring the existence of his entitlement to LTD, STD, LWOP, cancer, and AD&D/catastrophic loss; to

an order directing Guardian to disgorge life insurance premiums wrongfully accepted; to an order granting Plaintiff reasonable attorney's fees, prejudgment interest, costs, expenses incurred in connection with this lawsuit pursuant to ERISA, 29 U.S.C. Section 1132(g)(1); and for such other equitable relief as this Court deems just and proper.

**WHEREFORE,** having fully stated his Complaint against Defendants, Plaintiff prays for a declaration of entitlement to LTD, STD, LWOP, cancer, and AD&D/ catastrophic loss pursuant to 29 U.S.C. § 1132(a)(1)(B), attorney's fees and costs pursuant to 29 U.S.C. § 1132(g) from Defendants, refund of life insurance premiums paid, and such other and further equitable relief as this Court deems just and proper, including pre-judgment interest on all benefits due from the point at which benefits were payable through the time of judgment.

Respectfully submitted,

*/s/ Nekki Shutt*

Nekki Shutt (Fed. Bar No.:6530)
BURNETTE SHUTT & MCDANIEL, PA
Post Office Box 1929
Columbia, South Carolina 29202
Tel.  (803) 904-7912
Fax  (803) 904-7910
Nsutt@BurnetteShutt.law

**ATTORNEYS FOR PLAINTIFF**

Columbia, South Carolina

October 12, 2023